OPINION OF THE COURT
 

 Ciparick, J.
 

 The question presented by this appeal is whether Supreme Court’s supplemental instruction to a deadlocked jury was unbalanced and coercive so as to deprive defendant of a fair trial. We conclude that it was.
 

 Defendant was charged in a single-count indictment with criminal sale of a controlled substance in the third degree (Penal Law § 220.39), arising from a buy and bust operation in Manhattan. His trial consisted of approximately three hours of testimony from three witnesses, two for the prosecution and one for the defense. The only issue at trial was the identity of defendant as the seller.
 

 On the morning of April 30, 2001, following summations, the trial judge charged the jury and it began its deliberations. After
 
 *306
 
 about five hours, and having requested exhibits and readback of testimony, the jury sent a note at 4:05 p.m. claiming that it was “deadlock[ed] at this time.” The jurors were brought back into the courtroom and, the trial judge instructed them to “[c]ontinue deliberating. We await your verdict.”
 
 [1]
 
 The jurors were subsequently excused until 9:30 a.m. the next morning.
 

 On the second day of deliberations, the jurors again made a request for testimony to be read back. At 3:30 p.m., after about five more hours of deliberations, the jurors sent a second deadlock note to the court, stating that “we are not able to come up with a unanimous decision.” Defense counsel’s request for a mistrial was rejected and the jurors were brought into the courtroom. The trial judge then delivered the following supplemental instruction:
 

 “When we started, you heard me describe a couple of different ways in the preliminary remarks and in the jury selection what the point of this was. Other countries do it a different way. You heard me describe how some countries don’t have juries. Some countries don’t have trials. We collectively for over 200 years have decided that we’re not leaving it to a group of military officers. We’re not leaving it to the single judge. We’re not leaving it to a panel of judges but you folks are doing it. The point of this process is to get a result.
 

 “Something happened in this case. It was proven or not. The standard was met or it was not. The tree that fell made a noise or it didn’t. The bell that was rung with nobody around—sorry. Something hit the bell probably and with nobody around. Only you
 
 *307
 
 folks can tell us was there a gong, a ding, a ping or nothing.
 

 “When I started to tell you what the law was so you could deliberate, almost certainly I said, if not these words, close to these words: Now I’m going to tell you what the law is to put you in a position to do what you said you would do when we started which is to decide this case. You heard me saying during jury selection no judge can say to defendant nor a prosecutor I’m tired of this case, plead guilty, I’m tired of this case, dismiss it. It stays in a drawer until a jury decides it.
 

 “Something happened in this case. It was not a nonevent. The standard was met or it was not and there is no other entity on the face of the earth that can tell us what the answer is to that.
 

 “Your note says: At 3:30 you, on May the 1st, [‘]we are not able to come up with a unanimous decision.’
 

 “Whether there is a rare occurrence—of course, it happens but it is a rare occurrence—whether there is in this case the rare occurrence of a jury unable to resolve a case is not a factual decision. It’s a legal decision. It is not your decision. It is mine. We are nowhere near at the point where I would begin to consider the possibility that you folks might not be able to resolve this case. Continue your deliberations please.”
 

 Defense counsel immediately registered an objection to this instruction on the ground that it was an improper
 
 Allen
 
 charge (see
 
 Allen v United States,
 
 164 US 492 [1896]), arguing that the supplemental instruction was coercive, would shame the jurors into a guilty result, and would create undue pressure on any dissenting jurors. The court denied counsel’s objection, and the jury continued deliberating, returning a verdict of guilty in just five minutes.
 

 Supreme Court convicted defendant, upon the verdict, of criminal sale of a controlled substance in the third degree and sentenced him, as a second felony offender, to a term of 6 to 12 years. The same court denied defendant’s CPL 330.30 motion to set aside the verdict made on the ground that the jury instruction was improper and coercive and therefore deprived him of
 
 *308
 
 his right to a fair trial.
 
 [2]
 
 The Appellate Division, with two Justices dissenting, reversed and remanded to Supreme Court for a new trial, holding that the supplemental jury instruction was unbalanced and coercive. Specifically, the Appellate Division found that the trial court’s charge (1) overemphasized the need to get a result, (2) suggested that the jurors were failing in their duty, (3) stressed that ‘‘[something happened” in the case, (4) presented jurors with the prospect of prolonged deliberations, and (5) failed to caution jurors not to surrender their conscientiously held beliefs. We agree and affirm the order of the Appellate Division.
 

 While perhaps no one of these five flaws would alone be enough to warrant reversal, their combined effect requires it. We have long approved supplemental charges that encourage a verdict after the jury has reported a deadlock
 
 (see People v Ford,
 
 78 NY2d 878, 880 [1991];
 
 see also People v Pagan,
 
 45 NY2d 725, 726 [1978]). “[A] trial court may properly discharge its responsibility to avoid mistrials by encouraging jurors to adhere to their oaths and make one final effort to review the evidence and reach a verdict one way or the other”
 
 (Pagan,
 
 45 NY2d at 727). However, a court “ ‘must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict’ ”
 
 (Pagan,
 
 45 NY2d at 726, quoting
 
 People v Faber,
 
 199 NY 256, 259 [1910]). Supplemental charges that coerce jurors “with untoward pressure to reach an agreement will not be countenanced”
 
 (Pagan,
 
 45 NY2d at 727 [citations omitted]).
 

 Here, Supreme Court’s supplemental instruction overemphasized the jury’s obligation to return a verdict. It told the jury: “The point of this process is to get a result. Something happened in this case. It was proven or not. The standard was met or it was not.” The court continued in this vein to state that it had instructed jurors as to the law so as “to put you in a position to do what you said you would do when we started which is to decide this case.” Limited in scope to the importance of returning a verdict and suggesting that the jurors were failing in their duty to reach a decision, the court’s supplemental instruction as a whole was unbalanced and coercive
 
 (see Ford,
 
 78 NY2d at 880). The trial court’s admonition that it was “nowhere near” considering that the jurors would be unable to
 
 *309
 
 reach a decision added to the pressure to return a verdict, presenting jurors with the prospect of prolonged deliberations well beyond the two days they had already deliberated over the three-hour trial. Finally, the supplemental jury instruction failed to advise the jurors that they should not surrender a conscientiously held belief.
 

 While an
 
 Allen
 
 charge is not “unbalanced or coercive for its failure to emphasize that ‘the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of [a juror’s] fellows’ ”
 
 (see Ford,
 
 78 NY2d at 880, quoting
 
 Allen,
 
 164 US at 501), the charge here did not include any encouraging language to balance its instruction that the jury needed to “decide this case.” In giving supplemental jury instructions to a deadlocked jury, trial courts should follow up the importance of reaching a verdict with a clarifying statement to the effect that it is the jurors’ “duty to decide the case
 
 if
 
 they [can] conscientiously do so”
 
 (Allen,
 
 164 US at 501 [emphasis added]); jurors should not surrender their honest convictions “for the mere purpose of returning a verdict” (1 CJI[NY] 42.60, at 1019 [1983]). Contrary to the court’s supplemental instruction, the object of the jury system is not to “get a result,” it is “to secure unanimity by a comparison of views, and by arguments among the jurors themselves”
 
 (Allen,
 
 164 US at 501).
 

 The jury here, after a three-hour trial, two full days of deliberations and a second deadlock note, returned a verdict of guilty only five minutes after the supplemental instruction was given. While the swiftness of the verdict is not dispositive, it suggests that the jury was coerced
 
 (Lowenfield v Phelps,
 
 484 US 231, 240 [1988];
 
 see also United States v United States Gypsum Co.,
 
 438 US 422, 462 [1978]). The supplemental charge here fails to negate this coercive implication. Defendant was entitled to an uncoerced, unanimous jury verdict, not one tainted by the improper jury instructions given here. On retrial, the court should be mindful that criminal “jury instructions generally are not fertile ground for innovation during trial”
 
 (People v Owens,
 
 69 NY2d 585, 589 [1987]).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges G.B. Smith, Rosenblatt, Graffeo, Read and R.S. Smith concur.
 

 Order affirmed.
 

 [1]
 

 . The full text of this first supplemental instruction, not being challenged as coercive, is as follows:
 

 “Just generally asking, ever go to a doctor and you are really upset about something. Your health is obviously the most important thing in your life. You ever find yourself describing a situation to the doctor that is obviously very very problematic and it’s [sic] sort of eats you up. It is the most important thing going on in your life at that point and describe this very important personal problem. The doctor is sitting there, nodding and not saying a word because the doctor has heard it before.
 

 “I don’t know what you expected when you signed on for jury service. You’ve heard me in one way or [ ] another say I’ve been doing this for 18 years and this is jury deliberations. Continue deliberating. We await your verdict.”
 

 [2]
 

 . The trial judge maintained at trial and in a written opinion that he “gave the jury additional
 
 non-Allen
 
 instructions.” On this appeal, both sides agree that this supplemental instruction is subject to the
 
 Allen
 
 charge standard of review.