[926 NE2d 240, 899 NYS2d 733]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AVERY V. BAKER, JR., Appellant.

Argued February 17, 2010; decided March 25, 2010

POINTS OF COUNSEL

*Mitch Kessler*, Cohoes, for appellant. I. County Court violated appellant's constitutional right to a public trial by excluding his children's mother from the trial, since defense counsel announced that although her name appeared on the list of potential defense witnesses, he would not call her as a witness, and the People moved to exclude her based only on a vague suggestion that they might call her as a rebuttal witness. (*People v Nieves*, 90 NY2d 426; *Waller v Georgia*, 467 US 39; *People v Mateo*, 73 NY2d 928; *Rodriguez v Miller*, 439 F3d 68; *People v Sbarbaro*, 244 AD2d 581; *People v Warren O.*, 86 AD2d 895.) II. County Court denied appellant a fair trial by permitting the prosecution to display to the jury during summation a verbatim recitation of statutory language defining the mental states of depraved indifference to human life and recklessness. (*People v Owens*, 69 NY2d 585; *People v Vincenty*, 68 NY2d 899; *People v Spivey*, 81 NY2d 356.) III. Defense counsel rendered ineffective assistance by failing to object to County Court's instructions that the jury return a verdict on all three homicide counts of the indictment, each of which required a mental state distinct from the others, and to the court's acceptance of the verdict finding appellant guilty on all three counts, since the instructions relieved the jury of its responsibility of deciding with which mental state appellant acted and resulted in a triple conviction for a single homicidal act. (*People v Feingold*, 7 NY3d 288; *People v Trappier*, 87 NY2d 55; *Matter of Suarez v Byrne*, 10 NY3d 523; *People v Gallagher*, 69 NY2d 525; *People v Caban*, 5 NY3d 143; *Strickland v Washington*, 466 US 668; *People v Brown*, 45 NY2d 852; *People v Zaborski*, 59 NY2d 863; *Henry v Poole*, 409 F3d 48; *DeLuca v Lord*, 77 F3d 578.)

*Weeden A. Wetmore, District Attorney*, Elmira (*Damian M. Sonsire* of counsel), for respondent. I. Defendant's constitutional right to a public trial was not violated. (*People v Hinton*, 31 NY2d 71; *Charles v United States*, 215 F2d 825; *People v Felder*, 39 AD2d 373; *People v Cooke*, 292 NY 185; *People v Gifford*, 2 AD2d 634; *People v Warren O.*, 86 AD2d 895; *People v Crimmins*, 36 NY2d 230; *People v Lloyde*, 106 AD2d 405, 64 NY2d 890.) II. The prosecutor's summation was in all respects proper. (*People v Owens*, 69 NY2d 585; *People v Tucker*, 77 NY2d 861; *People v Williams*, 8 AD3d 963, 3 NY3d 683; *People v Laracuente*, 21 AD3d 1389, 6 NY3d 777; *People v Nash*, 273 AD2d 696; *People v Bryan*, 46 AD3d 1219, 10 NY3d 809.) III. The court properly charged the jury with regard to the homicide counts.

(*People v Carter,* 7 NY3d 875; *People v Gray,* 86 NY2d 10; *People v Alfaro,* 66 NY2d 985; *People v Satloff,* 56 NY2d 745; *People v Hawkins,* 11 NY3d 484; *People v Castellano,* 11 NY3d 850; *People v Griffin,* 48 AD3d 1233, 10 NY3d 840; *People v Soule,* 251 AD2d 1056, 92 NY2d 951; *People v Sweet,* 234 AD2d 957, 89 NY2d 1101; *People v Young,* 296 AD2d 588, 99 NY2d 541.)

## OPINION OF THE COURT

GRAFFEO, J.

The primary issue in this case is whether defendant's trial lawyer was ineffective because he did not ask the court to instruct the jury that it should consider the three homicide counts in the alternative. We conclude that defendant has not demonstrated that his attorney failed to provide meaningful representation and therefore affirm the order of the Appellate Division.

Defendant Avery V. Baker, Jr., lived with his then-girlfriend and her 20-month-old son, Jordan, in the City of Elmira, Chemung County. On the evening of September 12, 2006, defendant grabbed Jordan by one arm, carried him to his room and slammed the child into his crib. Shortly thereafter, Jordan began making choking sounds and his mother found that he was turning blue in his face, his body was seizing and he appeared to be unconscious. The child was brought to a hospital and was released the next day.

Three days later, defendant got upset when he discovered crayon drawings on a television. Another child in the household claimed that Jordan was responsible for the markings, so defendant ordered his girlfriend to get Jordan. The boy was brought to defendant and he proceeded to spank the child. When Jordan would not stop crying, defendant picked him up, shook him violently and threw him to the floor head first. Jordan screamed and attempted to stand up but was unable to do so.

Defendant lifted Jordan, who went limp and stopped breathing. Jordan's mother wanted to call 911, but defendant told her that Jordan would "come out of it" like he did on September 12th. When defendant's attempts to revive Jordan were unsuccessful, he telephoned 911 for emergency assistance. Paramedics took the child to the hospital for treatment of severe head trauma and, three hours later, Jordan was pronounced dead.

During his conversations with police investigators, defendant made a series of inconsistent statements about what had hap-

pened to Jordan. He eventually admitted that he had spanked Jordan, shaken him and thrown the child to the floor. In a written statement, defendant explained that he threw Jordan "too hard" out of anger and revealed that he had thrown the child on two prior occasions, with one incident occurring on September 12th.

A grand jury indicted defendant for depraved indifference murder of a child (Penal Law § 125.25 [4]), manslaughter in the first and second degrees (Penal Law § 125.20 [4]; § 125.15 [1]), and endangering the welfare of a child (Penal Law § 260.10) stemming from the homicide on September 15, 2006. With respect to the September 12th incident, defendant was indicted for endangering the welfare of a child and reckless endangerment in the second degree (Penal Law § 120.20). At the People's request, County Court later dismissed the charge of endangering the welfare of a child related to the September 15th incident.

A jury ultimately found defendant guilty of the remaining charges and he was sentenced to an aggregate prison term of 21 years to life. The Appellate Division affirmed (58 AD3d 1069 [2009]) and a Judge of this Court granted leave to appeal (12 NY3d 851 [2009]).

At the trial, the court informed the parties that it intended to allow the jury to consider all three homicide counts and would not charge them in the alternative. Defense counsel agreed to this presentation under *People v Trappier* (87 NY2d 55 [1995]). Defendant now asserts that his attorney's acquiescence constituted ineffective assistance of counsel because depraved indifference murder of a child, manslaughter in the first degree and manslaughter in the second degree are inconsistent counts that should have been charged to the jury in the alternative pursuant to *People v Gallagher* (69 NY2d 525 [1987]).

To succeed on an ineffective assistance claim, a defendant must prove that trial counsel failed to provide meaningful representation (*see e.g. People v Caban*, 5 NY3d 143, 152 [2005]; *People v Benevento*, 91 NY2d 708, 712 [1998]; *People v Baldi*, 54 NY2d 137, 147 [1981]). "A single error may qualify as ineffective assistance, but only when the error is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (*People v Caban*, 5 NY3d at 152). In addition, even if a defendant shows that the lawyer erred, a defendant must further "demonstrate the absence of strategic or other legitimate

explanations" for the error (*People v Rivera*, 71 NY2d 705, 709 [1988]).

Deciding whether defendant's trial lawyer was ineffective when he agreed that the jury should consider all three homicide offenses requires us to assess our precedent addressing inconsistent counts. In *Gallagher* (69 NY2d 525 [1987]), we explained that criminal charges must be considered in the alternative by the finder of fact if guilt of one charge is inconsistent with guilt of the other. If so, the jury may find the accused guilty of only one of the crimes because a finding of guilt on inconsistent counts results in a repugnant verdict. For example, a person cannot simultaneously intend to cause another person's death and at the same time consciously disregard a substantial risk that death will occur (*see id.* at 529). As a result of this inconsistency, *Gallagher* held that the crimes of intentional murder and depraved indifference murder must be charged in the alternative.

In *Trappier*, however, we recognized that "[a] defendant could certainly intend one result—serious physical injury—while recklessly creating a grave risk that a different, more serious result—death—would ensue from his actions" (87 NY2d 55, 59 [1995]). Thus, a jury may consider both attempted assault in the first degree and reckless endangerment in the first degree because those charges are not inconsistent and therefore do not have to be charged in the alternative. Based on the reasoning of *Trappier*, we recently determined that a defendant can be convicted of both first-degree intentional manslaughter (Penal Law § 125.20 [1]) and depraved indifference murder because the former crime requires an intent to inflict serious physical injury whereas the latter requires the reckless creation of a different result—a grave risk of death (*see Matter of Suarez v Byrne*, 10 NY3d 523, 540-541 [2008]).

Considering this precedent, we conclude that the counts of depraved indifference murder of a child and first-degree manslaughter as charged in the indictment were not inconsistent and it was proper to allow the jury to consider both offenses simultaneously rather than in the alternative. Depraved indifference murder of a child under Penal Law § 125.25 (4) requires that the defendant recklessly create a grave risk of serious physical injury or death under circumstances evincing a depraved

indifference to human life.* In contrast, first-degree manslaughter under Penal Law § 125.20 (4) involves an intent to cause physical injury. As *Trappier* declared, a defendant can "certainly intend one result . . . while recklessly creating a grave risk [of] a different, more serious result" (87 NY2d at 59). Hence, trial counsel's failure to object to the court's proposed charge with respect to these two counts did not amount to ineffective legal assistance.

Whether manslaughter in the second degree should have been charged as a lesser-included, alternative offense of the count of depraved indifference murder of a child is a closer question. We have held that manslaughter in the second degree is a lesser-included offense of depraved indifference murder under Penal Law § 125.25 (2) (*see People v Atkinson*, 7 NY3d 765, 766-767 [2006]), but we have not examined whether that also applies to depraved indifference murder of a child under subdivision (4) of section 125.25. The Third and Fourth Departments have considered this issue and ruled that second-degree manslaughter is not a lesser included offense of depraved indifference murder of a child (*see People v Heslop*, 48 AD3d 190, 195-196 [3d Dept 2007], *lv denied* 10 NY3d 935 [2008]; *People v Robinson*, 278 AD2d 798 [4th Dept 2000], *lv denied* 96 NY2d 762 [2001]). Hence, it was not unreasonable for defendant's trial attorney to believe that the jury could consider both depraved indifference murder of a child and manslaughter in the second degree, and that those counts did not have to be charged in the alternative (*see generally People v Carter*, 7 NY3d 875, 876-877 [2006]).

In any event, defendant has not shown that there was no legitimate tactical reason for trial counsel's decision to accept the charge regarding second-degree manslaughter. Because it is undisputed that defendant caused the child's death, it is conceivable that his attorney may have thought there was a benefit in giving the jury the option of considering the less serious homicide offense at the same time it deliberated over the depraved indifference murder and first-degree manslaughter charges. If jurors were split on either of the higher counts, defense counsel may have reasoned that they would compromise by convicting defendant of the less serious offense. Thus, counsel could have

---

* Depraved indifference murder under subdivision (2) of Penal Law § 125.25 is different because it only applies to a grave risk of death, not a grave risk of serious physical injury.

concluded that submission of all three homicide counts created an opportunity for jury leniency. Defendant therefore has not demonstrated that he was denied his right to meaningful representation at trial.

Defendant also contends that he was denied a fair trial because the People used a projector to display the legal definitions of depraved indifference and recklessness to the jury during summation. Defendant believes that this created a risk that the jury would place undue emphasis on those definitions during deliberations and that the prosecutor usurped the trial judge's duty to explain the law to the jury.

■ The slides in the record before us contain virtually verbatim definitions of depraved indifference murder and recklessness as set forth in the pattern Criminal Jury Instructions (CJI) (*see* CJI2d[NY] Penal Law § 125.25 [4]). Notably, the CJI instructions on depraved indifference incorporate our recent jurisprudence on the subject (*see e.g. People v Feingold,* 7 NY3d 288, 294-296 [2006]) and defendant concedes that the content of the slides accurately described the legal definitions of those terms. The use of the slides, therefore, could have assisted the jury in differentiating between ordinary recklessness for manslaughter and the extreme recklessness and heightened mental state that is needed to establish depraved indifference.

Furthermore, during the trial judge's pre-summation charge to the jury, he specifically advised: "I am responsible for setting forth the law, not the lawyers." The judge also explained that the lawyers were given a copy of the court's legal instructions before summations and might refer to those instructions during closing arguments. The judge cautioned the jurors that they had to "listen carefully to all the instructions that I will give you after the summations. And if you think there's any difference between what the lawyers may have said and what I say the law is, your sworn duty as jurors is to follow my instructions on the law." In the final charge, the court reiterated that the jurors were duty bound to "apply to the facts the law as I explain it." The slides were not given to the jury to review during deliberations (*cf. People v Owens,* 69 NY2d 585, 591 [1987] [a jury cannot be given only certain portions of final instructions in writing over the defendant's objection]).

In our view, the judge's instructions were sufficient to dispel any possibility that the jury would give precedence to or place undue emphasis on the prosecutor's use of the slides (*see gener-*

*ally People v Tucker*, 77 NY2d 861, 863 [1991]). Jurors are presumed to follow the legal instructions they are given (*see e.g. People v Guzman*, 76 NY2d 1, 7 [1990]; *People v Acevedo*, 69 NY2d 478, 488 [1987]) and, in conjunction with the court's appropriate commands, we believe that the use of the slides in this case did not prejudice defendant or undermine his right to a fair trial. As a result, it cannot be said that the trial court abused its discretion as a matter of law when it allowed this procedure.

■ Defendant's final contention is that his right to a public trial was violated when the court granted the prosecutor's request to exclude the mother of defendant's children from the trial because she was a potential witness. Courts have the discretion to exclude potential witnesses from the courtroom (*see People v Santana*, 80 NY2d 92, 100 [1992]; *People v Cooke*, 292 NY 185, 191 [1944]) without contravening the Sixth Amendment right to a public trial. On this record, it was not unreasonable for the court to find that the woman might be called as a rebuttal witness for the People, notwithstanding the fact that defense counsel indicated that he would not call her to the stand because her Family Court attorney prohibited her from being interviewed. In addition, the fact that the court allowed defendant's mother to remain in the courtroom undermines defendant's claim that the trial court sought to remove his relatives and friends from the courtroom. The constitutional cases defendant cites (*see e.g. Waller v Georgia*, 467 US 39 [1984]; *People v Nieves*, 90 NY2d 426 [1997]) therefore have no bearing on this case.

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, READ, SMITH, PIGOTT and JONES concur.

Order affirmed.