■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK MORGAN, Appellant. [1 NYS3d 39]—

---

**3.** The procedural history of the *Kralik* litigation was obtained from the briefs in the appeal to the First Department.

Judgment, Supreme Court, Bronx County (Nicholas J. Iacovetta, J.), rendered February 7, 2012, convicting defendant, after a jury trial, of manslaughter in the first degree and criminal possession of a weapon in the second degree, and sentencing him to an aggregate term of 18 years, affirmed.

After the jury purported to return a verdict but a poll revealed that two jurors did not agree, the court properly instructed the jury to resume deliberation and attempt to reach a unanimous verdict. Contrary to defendant's argument, defendant was not deprived of due process by the absence from this instruction of language reminding the jurors not to surrender their conscientiously held beliefs. The court had so instructed the jury in a charge that was given, with defendant's consent, two hours earlier. "Jurors are presumed to follow the legal instructions they are given" (*People v Baker*, 14 NY3d 266, 274 [2010]). Therefore, the court's charge in response to the defective verdict was appropriate under the circumstances (*see People v Ford*, 78 NY2d 878 [1991]; *People v Jolly*, 282 AD2d 474, 474-475 [2d Dept 2001], *lv denied* 96 NY2d 863 [2001]). Contrary to defendant's argument, the charge did not apply improper pressure on the two jurors who did not agree with the verdict or criticize those particular jurors (*see People v Pagan*, 45 NY2d 725 [1978]). Moreover, defense counsel did not actually request any particular instruction. Counsel merely conjectured that the two jurors who initially disagreed with the verdict might be led to believe that the case could not be resolved unless they submitted to the will of the remaining jurors. We note that the jury did not announce the verdict until a full day after the disputed charge was given following the readback of testimony it requested. Accordingly, the record does not support the dissent's position that the court's deadlock charge was coercive.

Defendant's contention that he was deprived of a fair trial when the court denied the jury's request for a readback of defense counsel's summation is unpreserved and waived, since defense counsel expressly agreed to the court's proposal to deny the jury's request. We decline to review this claim in the interest of justice. As an alternative holding, we reject it on the merits, since "declining to read back a summation is not an abuse of discretion" (*People v Clariot*, 188 AD2d 281, 282 [1st Dept 1992], *lv denied* 81 NY2d 838 [1993]; *see also People v Velasco*, 77 NY2d 469, 474 [1991]).

Defendant's ineffective assistance of counsel claim relating to the summation readback issue is unreviewable on direct appeal

(*People v Love*, 57 NY2d 998 [1982]). Accordingly, since defendant has not made a CPL 440.10 motion, the merits of the ineffectiveness claim may not be addressed on appeal. In the alternative, to the extent the existing record permits review, we find that defendant received effective assistance under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *Strickland v Washington*, 466 US 668 [1984]). Concur—Sweeny, J.P., DeGrasse, Feinman and Gische, JJ.

Manzanet-Daniels, J., dissents in part in a memorandum as follows: Because I believe that the deadlock charge in this case was unduly coercive, I would reverse the conviction and remand for a new trial.

Supplemental charges addressing a jury's declaration of deadlock must not coerce jurors "with untoward pressure to reach an agreement" (*People v Aponte*, 2 NY3d 304, 308 [2004] [internal quotation marks omitted]). A court aware of the nature of the jury's split must exercise particular care in delivering a deadlock charge (*see Smalls v Batista*, 191 F3d 272, 280 [2d Cir 1999]). Jurors may not be "impermissibly singled out for noncompliance with the majority" (*People v Pagan*, 45 NY2d 725, 727 [1978]; *cf. People v Kisoon*, 23 AD3d 18, 23-24 [2d Dept 2005] [court's decision not to read jury's note verbatim but to summarize it in such a manner so as not to, inter alia, reveal the jury's 10-2 vote for conviction, constituted prejudicial error requiring a new trial; court noted that had counsel been aware that two jurors were holding out for acquittal, he might have asked the court to include language in its response emphasizing the importance of jurors not surrendering their conscientiously held views merely for the purpose of rendering a verdict], *affd* 8 NY3d 129 [2007]).

The court's initial deadlock charge was balanced, appropriately encouraging the jurors to reach agreement "if that can be done without surrendering individual judgment." But after the jury revealed that it was split 10-2, the court summarily rejected the verdict and directed the jury to resume deliberations in an effort to reach a unanimous verdict, without including cautionary language admonishing them to adhere to their conscientiously held views. In my view, this was error.

As counsel noted in registering his objection to the charge, the court's instruction left the minority jurors with the impression that "the only way that things [would] ever[ ] come[ ] to an end is if they follow to the will of the other ten." The minority jurors very well may have felt "impermissibly singled out for noncompliance with the majority" (*Pagan*, 45 NY2d at 727). The lack of "cautionary language may well have left the minor-

ity juror with the belief that he or she had no other choice but to convince or surrender" (*Smalls*, 191 F3d at 280 [absence of language urging jurors not to surrender their conscientiously held beliefs, following revelation of 11-1 split, constituted reversible error]).

The fact that the jury twice requested a readback of the defense summation only bolsters the conclusion that the holdout jurors were struggling with the evidence and perhaps attempting to persuade the other jurors of their views before surrendering them for purposes of returning a verdict. If the holdouts favored the defense, they (as well as others on the jury) may have perceived the court's denial of the request as a sign of judicial disapproval of the defense position. At the same time, the denial of the request served to deprive any jurors who were predisposed toward the defense of ammunition they might have needed to persuade their fellow jurors.

I would accordingly hold that the court's refusal to include more balanced language in the charge constituted prejudicial error requiring reversal.