[68 NE3d 1224, 46 NYS3d 493]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v PATRICK MORGAN, Appellant.

Argued November 16, 2016; decided December 20, 2016

## POINTS OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Susan H. Salomon* of counsel), for appellant.

518

*Darcel D. Clark, District Attorney*, Bronx (*Catherine M. Reno, Nancy D. Killian* and *Stanley R. Kaplan* of counsel), for respondent.

**OPINION OF THE COURT**

GARCIA, J.

This case calls upon us to determine whether the trial court's supplemental instruction given after the jury returned a "verdict" that was not in fact unanimous was "unbalanced and coercive" such that it deprived defendant of his right to a fair trial. We agree with the Appellate Division that the instruction was proper and affirm.

Defendant was charged with murder in the second degree, among other things, in connection with a shooting that occurred in 2008. On the second day of deliberations, the jury sent out a note claiming that it was deadlocked. The following morning, the court asked the parties for suggestions as to how to proceed. The People responded that the court should simply instruct the jurors to "continue deliberation" without any additional charge. Defense counsel stated he "would be [alright]" if the court "just mention[ed]" that the jury should "proceed with deliberation." The court determined that "something more" was required, and instead repeated its final instruction concerning the jury's duty to deliberate:

"To reach a unanimous verdict, you must deliberate with the other jurors. That means, you should discuss the evidence and consult with each other, listen to each other, give each other[s'] views careful consideration and reason together when considering the evidence. And when you deliberate, you should do so with a view toward reaching an agreement if that can be done without surrendering individual judgment. Each of you must decide the case for yourself, but only after a fair and impartial consideration of the evidence with the other jurors. You should not surrender an honest view of the evidence simply because you want the trial to end or you are outvoted. At the same time, you should not hesitate to re-examine your views and change your mind if you become convinced that your position was not correct."

Approximately two hours later, the jury announced it had "come to a verdict."

In open court, the foreperson confirmed that the jury had agreed upon a verdict and had found defendant not guilty of murder in the second degree, guilty of manslaughter in the first degree, and guilty of criminal possession of a weapon in the second degree. It was not, however, a unanimous verdict; subsequent polling of the individual jurors revealed that two jurors disagreed with respect to at least one of the charged counts.

The judge informed the parties that he believed the "proper action to take . . . would simply be to remind the jury that [the] verdict has to be unanimous" and instruct them to resume deliberations. In response, defense counsel moved for a mistrial stating that the two jurors "clearly . . . have a different opinion than the other ten," and "are going to continue to have th[at] position." The court denied the request as premature and provided the following instruction:

"Ladies and gentleman, you may recall that during my final instructions I told you that your verdict as to any count of the indictment that you consider must be unanimous. That is, all 12 jurors must agree.

"Therefore, I am not going to accept this verdict. Instead, I'm going to order that the 12 jurors go

back to the jury room, resume your deliberations in an attempt to reach a unanimous verdict, that is where all 12 jurors agree as to any count submitted to you."

After the jury was sent to deliberate, defense counsel asked the court to consider an additional jury instruction. The trial court declined to do so.

Deliberations continued through the following day. Among other things, the jury asked for defense counsel's summation. The People objected, arguing that the summation was not in evidence. Defense counsel agreed, and the court declined to provide the summation to the jury. Later that day, the jury reached a verdict, finding the defendant not guilty of murder but guilty of manslaughter and criminal possession of a weapon. This time, polling was unanimous.

The Appellate Division, with one Justice dissenting, affirmed (*People v Morgan*, 124 AD3d 406 [1st Dept 2015]). The majority concluded that the court's instruction given after polling revealed the split in the jury vote was "appropriate under the circumstances" and that "defendant was not deprived of due process by the absence from th[e] instruction of language reminding the jurors not to surrender their conscientiously held beliefs" (*id.* at 407). The majority noted that such language was included in the court's prior charge, given just two hours earlier, and that "[j]urors are presumed to follow the legal instructions they are given" (*id.*). The majority also found that the charge "did not apply improper pressure on the two jurors who did not agree with the verdict or criticize those particular jurors" and was not coercive as demonstrated by the fact that the jury deliberated for a full day after the disputed charge (*id.*).

With respect to defendant's contention that the court erred in denying the jury's request for a readback of counsel's summation, the majority held it was unpreserved and waived since counsel expressly agreed to the court's proposal to deny the request (*id.* at 407). The majority found that, to the extent the record on direct appeal permitted review, defendant was not deprived of effective assistance of counsel by virtue of counsel's failure to object (*id.* at 408).

The dissent would have found that the instruction was coercive for its failure to include "cautionary language admonishing [the jurors] to adhere to their conscientiously held views" and for potentially singling out the minority jurors

(*id.* at 408-409 [Manzanet-Daniels, J., dissenting]). The dissenting Justice granted leave to appeal (2015 NY Slip Op 72429[U] [1st Dept 2015]).

On appeal, defendant again argues that the trial court's supplemental instruction in response to the defective verdict was coercive because it did not include language conveying that the jurors were not to surrender their conscientiously held beliefs or, in the alternative, did not specifically refer to the cautionary language in the court's previous deadlock charge. Defendant also contends that the court failed to exercise its discretion by refusing to grant the jury's request to rehear the defense's summation during deliberations and that defense counsel was ineffective in failing to object.

Pursuant to Criminal Procedure Law § 310.80, if in response to polling, "any juror answers in the negative, the court must refuse to accept the verdict and must direct the jury to resume its deliberation." When confronting a potential deadlock, a court may give a supplemental jury charge that "encourage[s]" the jurors to reach a unanimous verdict (*People v Aponte*, 2 NY3d 304, 308 [2004]). However, the court "must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict" (*People v Pagan*, 45 NY2d 725, 726 [1978] [internal quotation marks omitted], quoting *People v Faber*, 199 NY 256, 259 [1910]) and should not "prod jurors through prejudicial innuendoes or coerce them with untoward pressure to reach an agreement" (*id.*, 45 NY2d at 727). Nor should the instruction "impermissibly single[ ] out [any juror] for noncompliance with the majority" or suggest "that the jury would be forced to continue deliberations indefinitely" (*id.*). Our cases make clear that the propriety of a supplemental instruction must be considered in context and in light of all the circumstances.

In *People v Aponte*, we held that a supplemental jury instruction was "unbalanced and coercive" where the court stated that "[t]he point of this process is to get a result" and stressed that "[s]omething happened in this case . . . [i]t was proven or not . . . [t]he standard was met or it was not" (*Aponte*, 2 NY3d at 305-307). The court also instructed the jury that it would be a "rare occurrence" for a jury to be unable to resolve a case and that the jury was "nowhere near . . . the point where [the court] would begin to consider the possibility" of a deadlock (*id.* at 307). The jury returned a verdict a mere five minutes after this charge. We determined that these instructions warranted

reversal because, among other things, they "overemphasized the jury's obligation to return a verdict" and "suggest[ed] that the jurors were failing in their duty to reach a decision" (*id.* at 308). We also noted that the trial court should have included "encouraging language" in its charge to balance those problematic comments (*id.* at 309). Finally, although not "dispositive," the "swiftness of the verdict" also suggested that the jury was coerced (*id.*).

By contrast, in *People v Pagan*, we upheld a supplemental charge instructing the jury that they were "expected to come to a verdict" and should continue deliberations to "make every effort possible to arrive at a verdict" (*Pagan*, 45 NY2d at 726). The jury returned a verdict approximately 1½ hours later. We held that, while the instruction was not "ideal," the court "simply asked the jury to exert its best efforts and renew deliberations" (*id.* at 727). We emphasized that the jurors were not "improperly threatened" or "singled out for noncompliance with the majority," nor did the trial court "suggest[ ] that the jury would be forced to continue deliberations indefinitely" (*id.*).

The supplemental instruction in this case, taken in context, was not coercive. In response to the jury's representation that it had reached a "verdict"—when, in fact, the jury was not unanimous—the trial judge provided clarification that, in order to constitute a verdict, all jurors had to agree. Moreover, as in *Pagan*, the trial judge here stressed that the jurors should "attempt" to reach a verdict (45 NY2d at 726), thereby leaving "open the possibility that the jurors would have principled disagreements that would prevent them from reaching a unanimous verdict" (*United States v McDonald*, 759 F3d 220, 224 [2d Cir 2014]). The court did not "overemphasize" the need to return a verdict or "suggest[ ] that the jurors were failing in their duty" by not doing so (*Aponte*, 2 NY3d at 308; *see McDonald*, 759 F3d at 223). Nor did the court indicate that the jurors would be subject to "prolonged deliberations" (*Aponte*, 2 NY3d at 308).

Contrary to defendant's claim, the absence of "cautionary language" is not fatal to the supplemental charge. Just two hours before its supplemental instruction, the trial court provided an instruction containing ample cautionary language reminding the jury "not [to] surrender an honest view of the evidence." Moreover the jury continued to deliberate for a full day after receiving the challenged supplemental charge, sug-

gesting that it was not coerced. Under these circumstances, the trial court's instructions were not coercive and, accordingly, did not deprive defendant of his right to a fair trial.

Defendant's claim concerning the trial court's failure to read back defense counsel's summation is unpreserved and otherwise meritless. On this record, we cannot say that defense counsel was ineffective for failing to object to the trial judge's ruling.

The order of the Appellate Division should be affirmed.

Chief Judge DiFiore and Judges Pigott, Rivera, Abdus-Salaam, Stein and Fahey concur.

Order affirmed.