People v Everson (2025 NY Slip Op 05738)

People v Everson

2025 NY Slip Op 05738

Decided on October 16, 2025

Court of Appeals

Cannataro, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 16, 2025

No. 71

[*1]The People & c., Respondent,

v

James Everson, Appellant.

Bradley E. Keem, for appellant.

David D. Bassett, for respondent.

CANNATARO, J.

The primary question presented by this appeal is whether the trial court abused its discretion in denying defendant's request to sever his trial from that of his codefendant. We hold that there was no abuse of discretion in the circumstances presented and therefore affirm the order of the Appellate Division.

In the early morning hours of July 13, 2019, defendant, codefendant Amir Bordies and a third individual, JE, drove to a neighborhood park. Defendant and codefendant each fired a gun from the vehicle into a crowd of people who were gathered in the park; one bullet struck the victim, causing his death. The shooting was allegedly in retaliation for an incident that occurred days earlier, in which codefendant had been shot. Defendants were charged in a single indictment with murder in the second degree (Penal Law § 125.25 [1]) and four counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b], [3]), on an acting-in-concert theory.

Prior to their joint trial, defendant moved for severance. As relevant here, defendant asserted that the trials should be severed because Bordies' counsel intended to argue that defendant was responsible for the shooting. The court denied the motion, observing that the argument lacked specificity, but stated that, "[i]f this assertion does come to fruition . . . [,] we'll address it during the course of the trial." Defense counsel went on to elaborate that an argument by Bordies' counsel that defendant was responsible for the shooting would be "irreconcilable" with defendant's own defense that he was innocent of all charges. The court viewed the argument as "speculative," and reiterated that, "[i]f and when this comes about, I'll have to deal with it at that point in time."

In his testimony at trial, JE, the third occupant of the vehicle, implicated defendant and Bordies as the shooters. Defendant's former girlfriend, NL, also testified that defendant had been driving her vehicle the night of the shooting and that he had returned to her apartment, accompanied by Bordies and JE. NL testified that, at that time, defendant showed her two black guns and told her he had just killed somebody, although he very quickly claimed to be kidding. Surveillance footage introduced at trial documented the movements of what appeared to be NL's vehicle in the area of the park around the time of the shooting, as well as footage of the three men arriving at and departing from NL's apartment. The shooting itself was not captured on surveillance video. Ballistics evidence from the scene was consistent with shots having been fired from two guns.

Neither defendant called any witnesses, nor did either defendant elicit incriminating evidence against the other on cross-examination. No apparent conflict in the defenses arose until summation, when Bordies' counsel argued that the trial evidence supported the conclusion that defendant was one of the shooters. Specifically, Bordies' counsel asserted:

"[w]e know two things for sure about the car, shots came from it and there were two guns. . . . There's two guns. There's three people in the vehicle. Okay. So how do we know who did what? Well, we know who one of those persons was that had the gun. That's the person who confessed to his girlfriend that he did. We know one of the shooters was Mr. Everson because he told his girlfriend that."

The summation also challenged the credibility of JE, the sole witness to place a gun in Bordies' hand, and opined that the evidence supported the conclusion that JE, not Bordies, was the second shooter.

Following codefendant's summation, defendant's counsel renewed the motion to sever, "based on [codefendant's] closing argument in which he in effect acted as a second prosecutor against [defendant] in pointing the finger directly at him and essentially blaming him for the homicide." The court denied the motion, observing that it had instructed the jury prior to summations that the attorneys' arguments were not evidence and should not be considered as such. The court added that that it did not "see any reason to . . . sever this matter at this stage." In its final instructions, the court reiterated its admonition to the jury that closing statements were not evidence and further advised them that the evidence had to be considered as it applied to each defendant separately.

The jury convicted defendant of intentional second-degree murder and four counts of criminal possession of a weapon in the second degree.[FN1]

The Appellate Division affirmed, rejecting defendant's argument that County Court abused its discretion in denying his motion to sever (229 AD3d 1349, 1350 [4th Dept 2024]). One Justice dissented, opining that severance was required under the circumstances of this case. The dissenting Justice granted defendant leave to appeal to this Court.

Where two defendants are jointly charged in a single indictment, their trials may be severed based upon a showing of "good cause," which may be supported by a determination that a defendant "will be unduly prejudiced by a joint trial" (CPL 200.40 [1]). Whether to grant severance is a question ordinarily left to the discretion of the trial judge, subject to review under an abuse of discretion standard (see People v Cardwell, 78 NY2d 996, 997 [1991]; People v Bornholdt, 33 NY2d 75, 87 [1973]). Where, as here, the same evidence supplies the proof against both defendants, "only the most cogent reasons warrant a severance. While that is particularly true where the defendants are charged with acting in concert, in all cases a strong public policy favors joinder, because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses" (People v Mahboubian, 74 NY2d 174, 183 [1989] [internal quotation marks and citation omitted]).

We have consistently recognized that some degree of prejudice is inherent in every joint trial and that the policy in favor of joinder will not be overcome unless the prejudice against defendant is "undue" or "unfair" (see 74 NY2d at 184). Under this fact-specific inquiry, "severance is not required solely because of hostility between the parties, differences in their trial strategies or inconsistencies in their defenses. It must appear that a joint trial necessarily will, or did, result in unfair prejudice to the moving party and substantially impair [their] defense" (74 NY2d at 184 [internal quotation marks and citation omitted]). We have employed a two-part test, requiring severance [*2]"where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, that the conflict alone would lead the jury to infer defendant's guilt" (74 NY2d at 184).

Where counsel for a codefendant essentially functioned as "a second prosecutor" and elicited damaging evidence against the defendant, we have held that severance was required based on the "compelling prejudice" to the defendant (Cardwell, 78 NY2d at 998 [internal quotation marks and citation omitted]). No similar degree of prejudice was created by codefendant's closing argument here.

As noted, defendant raised the specter of a potential irreconcilable conflict between the defenses prior to trial, but apart from the comments made in summation, the defenses were remarkably consistent in their primary focus on discrediting the eyewitness. Although Bordies' argument that the evidence supported the conclusion that defendant was guilty was diametrically opposed to defendant's claim of innocence, this type of discord emerging between codefendants only in summation did not rise to the level of an irreconcilable conflict for purposes of severance in these particular circumstances.

Moreover, the trial court properly instructed the jury that the attorneys' arguments were not evidence and should not be considered as evidence when they judged the facts. That being so, and given that the jury is presumed to have followed the court's instructions (see People v Baker, 14 NY3d 266, 274 [2010]), any conflict raised solely by counsel's arguments could not have formed the basis of the jury's verdict. In sum, there was no "undue" prejudice to defendant.[FN2]

Defendant's remaining argument concerning the sufficiency of the evidence lacks merit. Viewing the evidence in the light most favorable to the People, the evidence was legally sufficient to support the verdict (see People v Danielson, 9 NY3d 342, 349 [2007]).

Accordingly, the order of the Appellate Division should be affirmed.

Order affirmed. Opinion by Judge Cannataro. Chief Judge Wilson and Judges Rivera, Garcia, Singas, Troutman and Halligan concur.

Decided October 16, 2025

Footnotes

Footnote 1: Bordies was likewise convicted of all charges. His appeal remains pending before the Appellate Division.

Footnote 2: In light of our determination, it is not necessary to address whether an argument raised in summation could ever create undue prejudice requiring severance (compare United States v Pérez-Vásquez, 6 F4th 180, 201 [1st Cir 2021] [rejecting motion for mistrial based on closing argument]).