This opinion is uncorrected and subject to revision before
publication in the New York Reports.
-------------------------------------------------------------------

No. 160
The People &c.,
            Respondent,
        v.
Herman Bank,
            Appellant.
------------------------
No. 161
The People &c.,
            Respondent,
        v.
Herman H. Bank,
            Appellant.

Case No. 160:
        Robert N. Isseks, for appellant.
        Leah R. Mervine, for respondent.

Case No. 161:
        Timothy Davis, for appellant.
        Leah R. Mervine, for respondent.

PIGOTT, J.:

        On May 27, 2007, defendant, who was operating his car
while under the influence of cocaine, drove the wrong way on
Interstate 590 in Monroe County.  He collided with another
vehicle at highway speed, killing two of the occupants and

- 1 -

seriously injuring a third.

Defendant was charged with multiple criminal counts, including two counts of manslaughter in the second degree (Penal Law § 125.15 [1]) and vehicular manslaughter in the first degree (Penal Law § 125.13 [4]). He pleaded not guilty and the case proceeded to a bench trial on December 9, 2008.

At trial, the People presented the testimony of three eyewitnesses who observed defendant's vehicle traveling the wrong way on the interstate shortly before the accident. They also presented several witnesses who testified to the aftermath of the crash. One of the paramedics who arrived on the scene testified that defendant, who was trapped in his vehicle, appeared "calm and glassy eyed." Defendant repeatedly asked how many cars he hit, and angrily stated that his girlfriend was "on a date with another guy." Prior to being extracted from the vehicle, the paramedic administered morphine to the defendant.

A responding state trooper testified that he found two bottles of prescription pills in defendant's vehicle. The Trooper went to the hospital after defendant was transported there, and based on his observations, asked defendant to submit to a chemical test. At first, defendant stated: "I don't think I can do that. I made a mistake earlier in Buffalo. I was with a hooker. She blew cocaine smoke in my mouth. . . That will show up." The Trooper then obtained a court order for a blood draw, which revealed the presence of cocaine in defendant's system but

none of the prescription drugs that were found in the vehicle. The People also presented the testimony of a toxicologist, who opined that defendant "was under the influence of cocaine at the time of the accident" and "would have been unable to safely operate a vehicle."

Defendant asserted the affirmative defense that he was suffering from a mental disease or defect that rendered him not legally responsible. His counsel supported that theory by calling a clinical pharmacist, who opined that defendant "in the condition that he was in on that evening, lacked adequate insight and judgment as to the consequences of his actions." The expert explained defendant's history of bipolar disorder and stated that before the crash, he was not taking his prescription medication, resulting in mania. She also testified that the prescription drug defendant was taking predisposes someone to entering a manic or hypomanic phase, if not prescribed with a mood stabilizer. The expert disagreed with, and challenged the finding of the People's experts who had performed an extrapolation to determine the level of cocaine in defendant's blood at the time of the crash. Finally, she discussed how the morphine that was administered to defendant at the scene of the crash could have had negative effects on the voluntariness and accuracy of his post-accident statements.

In rebuttal, the People called a physician who opined that defendant was not hypomanic at the time of the crash and

that even if he was, he would have understood the nature and consequences of his actions. In addition to the physician, the People also called a forensic psychologist, who testified that defendant's actions prior to and after the accident were consistent with drug intoxication and not his proffered defense. In sur-rebuttal, defense counsel challenged the methodology of the People's forensic psychologist with his own expert.

Following deliberations, the court found defendant guilty on all counts of the indictment. At sentencing, the court noted that it was "limited in what sentence can be imposed as a message not only to [defendant], but to the community. I think it does call for the maximum, more than the maximum." He then sentenced defendant to an aggregate indeterminate term of incarceration of 5 to 15 years.

On direct appeal, the Appellate Division affirmed the judgment of conviction and sentence, rejecting defendant's argument that defense counsel's choice to present his defense through a pharmacological expert rather than a psychological or psychiatric expert deprived him of meaningful representation (129 AD3d 1445 [4th Dept 2015]).

I.

Some four years later and after the death of both his attorney[1] and the original judge, defendant filed a motion pursuant to CPL 440.10 seeking to vacate the judgment of

---

[1] Defense counsel died in August 2010.

conviction on the ground that he had received ineffective assistance of counsel in the pretrial stages of the proceedings against him.  Specifically, he argued that his attorney was constitutionally deficient because he mistakenly believed that defendant's potential sentences on each count were statutorily required to run consecutively.  He further alleged that his attorney did not engage in plea negotiations, and therefore no plea offer was conveyed to him as a result of counsel's erroneous advice.

During a hearing on the motion, defendant averred that his attorney advised him that he faced consecutive sentences with an aggregate maximum term of 11 1/2 to 34 years. Relying on the attorneys' incorrect advice, defendant did not believe that a negotiated plea was worth pursuing and his attorney never engaged in plea negotiations on his behalf.  Instead, defense counsel told the prosecutor that defendant was not interested in entering into plea negotiations.

In response, the People called the Assistant District Attorney who had been responsible for the case the year before it went to trial.  Her testimony was that the case involved "a very horrific crash" and did not warrant a plea bargain.  She testified that she had "made clear" to defendant's attorney that she would not be making any plea offers, and further, that even if she felt an offer was appropriate, "given the magnitude of the case," she would have still needed the consent of the District

Attorney of Monroe County to any reduction from the maximum.

County Court denied defendant's motion and the Appellate Division unanimously affirmed (124 AD3d 1376 [4th Dept 2015]). The court held that while defendant established that defense counsel incorrectly advised him during plea negotiations that he was facing consecutive sentences after conviction, he failed to establish that he was deprived of the possibility of a plea bargain acceptable to him as the result of that error (id. at 1378). A Judge of this Court granted defendant leave to appeal from that order and from the order affirming the judgment.

Defendant's sole argument with respect to the CPL 440 motion is that his attorney was constitutionally ineffective for incorrectly advising him, at the pretrial stage, that his sentences were statutorily required to run consecutively. He contends that the record demonstrates a "reasonable probability" that this incorrect advice "affected the outcome of the proceedings" and that he was denied "meaningful representation" based "on the unfitness of the process as a whole."

It is well settled that a defendant is entitled to the effective assistance of competent counsel at the plea negotiations stage (see Padilla v Kentucky, 559 US 356, 364 [2010]). A defendant, however, has no constitutional right to a plea bargain (see Lafler v Cooper, 132 S Ct 1376, 1395 [2012]; People v Adams, 20 NY3d 608, 613 [2013]). In New York, the standard for an ineffective assistance of counsel claim is

whether the defendant was afforded "meaningful representation" and, while significant, the prejudice component of an ineffective assistance claim is not necessarily indispensable (People v Henry, 95 NY2d 563, 565 [2000]; see People v Stultz, 2 NY3d 277, 284 [2004]; People v Benevento, 91 NY2d 708, 712 [1998]).

Here, the Appellate Division found, and the record supports the determination, that defendant's attorney incorrectly advised him that he was subject to mandatory consecutive sentences. There is no dispute that counsel's advice to defendant was incorrect: consecutive sentences were not mandatory nor even an option (see CPL 70.25 [2]).

However, defendant was required to show more than incorrect advice by defense counsel. Here, the record supports the Appellate Division's determination that there was no possibility that a reduced plea would have been offered to defendant. Therefore, the incorrect advice could not have affected the outcome of the proceedings. The People entertained no plea possibility or any reduction in the sentence given, among other things, the maximum sentence defendant faced for killing two adults and injuring a third was an aggregate term of just 5 to 15 years. Nor was there any proof that the court would have extended an offer to a reduced sentence. Rather, the sentencing court remarked that it did not think the maximum sentence was enough punishment for defendant under the circumstances of this case.

We have considered defendant's remaining arguments on his motion and find them to be lacking in merit.

## II.

With respect to the direct appeal, defendant argues that his attorney's reliance on the expert testimony of a clinical pharmacist, as opposed to a forensic psychiatrist, amounted to ineffective assistance of counsel. But defendant, a pharmacist himself, and his attorney pursued a reasonable trial strategy by attempting to demonstrate the effect of the medications on defendant's mental health. The expert supported the defense's theory that defendant was in a state of mania as a result of the combination of his bipolar medication and a new prescription, and she testified in great detail as to how these drug interactions could have rendered defendant incapable of understanding the consequences of his actions. We cannot question, in hindsight, what appears to have been a reasonable strategy of placing before the trier of fact testimony as to how defendant's medication altered his mental state. Defendant's claim that defense counsel should have put on a different expert, or that one even exists, is purely conjectural.

Accordingly, each of the Appellate Division orders should be affirmed.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>For Each Case</u>: Order affirmed.  Opinion by Judge Pigott.  Chief Judge DiFiore and Judges Rivera, Abdus-Salaam, Stein, Fahey and Garcia concur.

Decided November 1, 2016