People v Borcyk (2020 NY Slip Op 03359)





People v Borcyk


2020 NY Slip Op 03359


Decided on June 12, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CARNI, J.P., LINDLEY, CURRAN, WINSLOW, AND BANNISTER, JJ.


1216 KA 19-00307

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
GREGORY BORCYK, DEFENDANT-APPELLANT. 






EDELSTEIN & GROSSMAN, NEW YORK CITY (JONATHAN I. EDELSTEIN OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (STEPHEN X. O'BRIEN OF COUNSEL), FOR RESPONDENT. 


 Appeal, by permission of a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department, from an order of the Monroe County Court (Vincent M. Dinolfo, J.), entered January 22, 2019. The order denied the motion of defendant to vacate a judgment of conviction pursuant to CPL 440.10. 
It is hereby ORDERED that the order so appealed from is reversed on the law, the motion is granted, the judgment of conviction is vacated, and a new trial is granted.
Memorandum: Defendant was previously convicted after a jury trial of murder in the second degree (Penal Law § 125.25 [1]). He appealed, and this Court affirmed (People v Borcyk, 60 AD3d 1489 [4th Dept 2009], lv denied 12 NY3d 923 [2009]). Defendant thereafter moved to vacate the judgment of conviction. County Court denied the motion without a hearing. This Court reversed that order and remitted the matter for a hearing on the motion insofar as it sought to vacate the judgment of conviction on the grounds of ineffective assistance of counsel and actual innocence (People v Borcyk, 161 AD3d 1529, 1530 [4th Dept 2018]). Defendant now appeals by permission of this Court from an order denying his motion after a hearing.
Initially, we reject defendant's contention that he established his claim of actual innocence by clear and convincing evidence (see People v Hamilton, 115 AD3d 12, 26-27 [2d Dept 2014]; see generally CPL 440.10 [1] [h]; People v Conway, 118 AD3d 1290, 1290 [4th Dept 2014]).
We agree with defendant, however, that the court erred in denying the motion with respect to defendant's claim that he received ineffective assistance of counsel, and we therefore reverse the order, grant the motion to vacate the judgment of conviction on the ground of ineffective assistance of counsel, and grant defendant a new trial.
"What constitutes effective assistance is not and cannot be fixed with yardstick precision, but varies according to the unique circumstances of each representation" (People v Baldi, 54 NY2d 137, 146 [1981]; see People v Benevento, 91 NY2d 708, 712 [1998]). "The core of the inquiry is whether defendant received meaningful representation' " (Benevento, 91 NY2d at 712). "[T]o prevail on a claim of ineffective assistance, [a] defendant[] must demonstrate that [he or she was] deprived of a fair trial by less than meaningful representation; a simple disagreement with strategies, tactics or the scope of possible cross-examination, weighed long after the trial, does not suffice" (id. at 713 [internal quotation marks omitted]). Thus, "it is incumbent on [a] defendant to demonstrate the absence of strategic or other legitimate explanations for defense counsel's allegedly deficient conduct" (People v Atkins, 107 AD3d 1465, 1465 [4th Dept 2013], lv denied 21 NY3d 1040 [2013] [internal quotation marks omitted]; see People v Bank, 124 AD3d 1376, 1377 [4th Dept 2015], affd 28 NY3d 131 [2016]; People v Young, 167 AD3d 1448, 1449 [4th Dept 2018], lv denied 33 NY3d 1036 [2019]). It is well [*2]settled that "[t]he failure to investigate or call exculpatory witnesses may amount to ineffective assistance of counsel" (People v Mosley, 56 AD3d 1140, 1140-1141 [4th Dept 2008]; see People v Pottinger, 156 AD3d 1379, 1380 [4th Dept 2017]).
In support of his motion, defendant contended that defense counsel was ineffective because he failed to secure the presence of a witness who had potentially exculpatory information. In particular, defendant contended that defense counsel spoke, prior to trial, with a witness who represented that she would testify, among other things, that her former boyfriend had admitted to her that he killed the victim. According to defendant, although the witness's testimony would have supported the defense presented at trial and although defense counsel stated his intent to call the witness, when the witness did not appear at trial, defense counsel inexplicably failed to pursue available means for securing her attendance.
Under the circumstances of this case, we conclude that defendant met his burden of establishing that defense counsel's failure to secure the presence of the witness constituted ineffective assistance of counsel inasmuch as the record before us reflects "the absence of strategic or other legitimate explanations for defense counsel's allegedly deficient conduct" (Atkins, 107 AD3d at 1465 [internal quotation marks omitted]; see generally CPL 440.30 [6]). Importantly, this is not a case where we must speculate about defense counsel's trial strategy. Throughout defendant's trial, defense counsel pursued a theory that one or more members of a group of three men, which included the witness's former boyfriend, killed the victim and moved her body to the wooded area in which it was ultimately discovered. Indeed, evidence at trial included the statement of a man who saw the three men, who appeared to be engaged in a drug sale, enter the victim's home. He later saw two of the men emerge with an item that appeared to be the victim's body, which they placed into the trunk of the car that they drove away. Additionally, the sperm of the witness's former boyfriend was recovered from a shirt inside of the victim's home, and it was stipulated at trial that, at the time of the murder, the witness's former boyfriend was dating the victim.
Consistent with the theory defendant presented at trial, the witness testified at the CPL article 440 hearing that, although she did not know the victim, her former boyfriend told her prior to defendant's trial that he was a suspect in the victim's murder but did not believe that he would be charged. The witness explained that some time later, but also prior to defendant's trial, that boyfriend broke into her home and attempted to strangle her and that, during this incident, he recorded himself on a tape recorder, stating his name, date of birth, and social security number, and saying, "yeah, I killed that bitch," although the witness did not know what happened to the tape recorder. She further testified that the boyfriend stated that he killed the victim and left her body in a wooded area.
Moreover, at the time of the trial, defense counsel explicitly informed the court, on the record, that his strategy was to call the witness and present her exculpatory testimony. In this regard, defense counsel stated, "[t]here's one other issue that may or may not come up . . . [that has] to do with [the witness]. [The witness] had a conversation with her then-boyfriend . . . who had been the boyfriend of [the victim] where [the boyfriend] made a tape recording of his voice, identifying his name, his date of birth and his social security number, and indicated there that he killed [the victim]. His words were I killed the bitch. I killed the bitch. I killed the bitch.' And that is the substance of a police report that I received from [the prosecutor]." When the court asked how defense counsel intended to introduce this testimony, he responded, "[w]ell, I intend to call [the witness], should she appear in court. She was subpoenaed. She appeared on Thursday pursuant to the subpoena as well and told me this information for the first time. I don't know whether she's going to be here when we need to call her, which is why I thought maybe we'd wait and see if she showed up and not take the Court's time to do extra research on this issue. But since you've asked me to bring up any possible issues, I would put her on the witness stand and make an offer of proof to the Court and attempt to prove her reliability of the information that she's giving under the Settles case relating to a statement against [the boyfriend's] penal interest." When the court then asked whether "[the witness's] testimony would relate to this particular homicide," defense counsel responded, "Oh yes. Yes." Nevertheless, and consistent with defense counsel's representation that he would pursue the testimony only if the witness appeared as directed, defense counsel took no further action to secure the witness's presence when she did not appear (see Borcyk, 161 AD3d at 1531). We agree with defendant that the failure to secure the witness's attendance was deficient conduct and [*3]that the record discloses no tactical reason for defense counsel's actions (see generally People v Dombrowski, 94 AD3d 1416, 1417 [4th Dept 2012], lv denied 19 NY3d 959 [2012]).
In so holding, we reject the determination of the court, following the CPL article 440 hearing, that defense counsel may have legitimately decided against calling the witness because he deemed her incredible. To the contrary, the record affirmatively establishes that, even after meeting with and speaking to the witness, defense counsel stated that he intended to call her as a witness. We note that defense counsel could not be located to testify at the CPL article 440 hearing, although the record reflects that he previously informed the parties that he could no longer recall defendant's trial.
The dissent's focus on the court's determination that the witness was not credible is misplaced. The hearing on defendant's CPL article 440 motion took place years after both the events described by the witness and the alleged instance of ineffective assistance of counsel. Whether the witness appeared credible at the hearing years after the trial does not answer the question whether defense counsel, at the time of the trial, possessed a strategic reason not to call her. To the contrary and unique to this case, the record reflects that defense counsel, at the time of the trial, spoke with the witness, believed that the witness possessed relevant testimony, considered her testimony helpful to the defense, and stated that his trial strategy was to call her as a witness. Simply put, the court's assessment of the witness's credibility after a lengthy passage of time does not alter the fact that defense counsel, at the time of the trial and the alleged ineffective assistance, believed the witness to be credible enough to present to the jury.
Further, the record belies the conclusion of the court and the dissent that defense counsel may have had a strategic reason for failing to call the witness. Defense counsel explicitly informed the court that his strategy was to call the witness if she was "here when we need to call her." Thus, this Court need not speculate why defense counsel failed to call the witness because defense counsel placed his reasoning on the record: he failed to call the witness because she did not appear—a failure that this Court has recognized could support a claim of ineffective assistance (see Borcyk, 161 AD3d at 1531). Nothing in the record indicates that defense counsel amended that plan, that he failed to call the witness for any reason other than her nonappearance, or that he altered his belief that her testimony would be helpful to the defense.
The mere absence of a legitimate strategy in failing to secure the witness's presence at trial does not end the inquiry. A single error may qualify as ineffective assistance only if it is "sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial" (People v Baker, 14 NY3d 266, 270 [2010] [internal quotation marks omitted]). Under the circumstances of this case, however, we conclude that the error was sufficiently egregious to constitute ineffective assistance of counsel.
At defendant's trial, the prosecution relied primarily on evidence that material containing defendant's DNA was recovered from underneath the victim's fingernails and that his sperm was found inside her vagina, although the victim's body showed no sign of rape. At his CPL article 440 hearing, however, defendant explained that, although he did not recognize the victim, he had exchanged sex for drugs with various prostitutes around the time of the victim's death, and it was undisputed at defendant's trial that the victim was a prostitute and drug user. In opposition to the People's evidence, the defense largely relied on the statement of the man who had seen the witness's former boyfriend near the victim's home and later near what appeared to be her body; evidence that the former boyfriend's sperm was found in the victim's home; and evidence that blood from an unidentified person was found on the threshold. Critically, the witness's testimony would have corroborated the defense's theory by providing evidence that a direct admission was made by the very person the defense suggested had committed the murder and was in proximity to the victim's body after her death.
Notably, this is not a case where defense counsel simply chose to pursue a different trial strategy that did not implicate the witness's testimony (see e.g. Baldi, 54 NY2d at 146). Instead, throughout the trial, defense counsel argued and presented proof that the witness's former boyfriend or his associates killed the victim. Indeed, this was defendant's sole theory of the victim's death. It was thus vital for defendant to corroborate the evidence placing the witness's former boyfriend at the scene of the murder, and this corroboration was precisely what the witness's testimony offered.
All concur except Curran and Winslow, JJ., who dissent and vote to affirm in the following memorandum: We respectfully dissent because we disagree with the majority's conclusion that defendant carried his burden of establishing, by a preponderance of the evidence, "the absence of strategic or other legitimate explanations for defense counsel's allegedly deficient conduct" (People v Atkins, 107 AD3d 1465, 1465 [4th Dept 2013], lv denied 21 NY3d 1040 [2013] [internal quotation marks omitted]; see CPL 440.30 [6]; People v Bank, 124 AD3d 1376, 1377 [4th Dept 2015], affd 28 NY3d 131 [2016]; People v Young, 167 AD3d 1448, 1449 [4th Dept 2018], lv denied 33 NY3d 1036 [2019]), i.e., defense counsel's failure to secure the presence of a witness who had potentially exculpatory information. Although a close call, on the record before us, we conclude that defendant did not meet his burden, and we would therefore affirm the order denying defendant's motion to vacate the judgment.
It is well settled that, to be entitled to vacatur of a judgment under CPL 440.10 (1) (h) based on a claim of ineffective assistance of counsel, a defendant is required " to demonstrate the absence of strategic or other legitimate explanations' for counsel's alleged shortcomings" (People v Benevento, 91 NY2d 708, 712 [1998], quoting People v Rivera, 71 NY2d 705, 709 [1988]; see People v Baker, 14 NY3d 266, 270-271 [2010]). Absent evidence that no reasonable strategy animated defense counsel's allegedly deficient conduct, it is presumed that defense counsel acted competently (see People v Wells, 187 AD2d 745, 745-746 [2d Dept 1992], lv denied 81 NY2d 894 [1993]; see generally People v Flores, 84 NY2d 184, 187 [1994]). Simple disagreement with strategies or tactics "does not suffice" to satisfy a defendant's burden of establishing ineffective assistance of counsel (Flores, 84 NY2d at 187) because as long as the evidence, the law, and the circumstances of a case, "viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (People v Baldi, 54 NY2d 137, 147 [1981]; see People v McDaniel, 13 NY3d 751, 752 [2009]).
Although what constitutes effective assistance of counsel varies according to the unique circumstances of each case, the consistent core of our inquiry is whether the defendant received meaningful representation (see Baldi, 54 NY2d at 146-147). "The phrase meaningful representation' does not mean perfect representation' " (People v Ford, 86 NY2d 397, 404 [1995], quoting People v Modica, 64 NY2d 828, 829 [1985]), and defense counsel's representation need not be completely error-free. Thus, courts are "properly skeptical" when "disappointed [defendants] try their former lawyers on charges of incompetent representation" (Benevento, 91 NY2d at 712 [internal quotation marks omitted]; see People v Brown, 7 NY2d 359, 361 [1960], cert denied 365 US 821 [1961], rearg denied 12 NY2d 1022 [1963]; see also People v Satterfield, 66 NY2d 796, 798-800 [1985]).
Here, we conclude that defendant failed to demonstrate that defense counsel's decision not to procure trial testimony from the witness was not strategic. In our view, County Court properly concluded that the witness's testimony implicating her former boyfriend in the victim's death was not credible. The witness provided the purportedly exculpatory information to the police and an assistant district attorney (ADA) as a justification for her alleged stabbing of her former boyfriend, and the court properly determined that the witness's statement that the former boyfriend verbally admitted to her that he killed the victim was entirely self-serving because it was offered only in an attempt to ameliorate the charges pending against her. The witness did not come forward with the information until after she was charged in the stabbing—almost 18 months after the victim was killed—and, although she claimed that she told the police and the ADA that her former boyfriend recorded some of his statements about the victim's death, there was no mention of any such recordings in the reports of the officers who spoke to her. The witness's credibility was further diminished by her inability to explain why she used an alias when she gave her statement to the police and the ADA. Given the issues surrounding the witness's credibility, defense counsel could have reasonably concluded that presenting the witness's testimony would have strained the jury's credulity.
Moreover, defense counsel could have made the strategic decision not to call the witness in light of the other available evidence that supported the theory that someone other than defendant killed the victim. To that end, we note that at trial, defense counsel and the prosecutor stipulated to the admission in evidence of the statement of a man who told police that, at approximately 11:00 p.m. on the night before the victim's body was discovered, he saw three men enter the victim's home, one of whom was the witness's former boyfriend, and later saw [*4]two of those men carrying the victim's body out of her home and placing it in the trunk of a vehicle. Defense counsel also procured from the prosecutor a stipulation that a shirt was taken from the victim's home, and the forensic biologist's testimony at trial established that a semen stain found on the shirt matched the DNA profile of the witness's former boyfriend. The two stipulations that defense counsel obtained allowed him to argue that the credible evidence identified the witness's former boyfriend as the killer without exposing the witness herself to cross-examination. This permitted defense counsel to blunt the effect of the DNA evidence, which was the strongest evidence against defendant, and to argue to the jury that the DNA evidence proved only that defendant had sex with the victim, not that he was also her killer.
In our view, the majority places undue emphasis on defense counsel's statement at trial that he "intended to call" the witness. Viewed in context, defense counsel's statement actually indicated his doubts about the witness's reliability—particularly with respect to whether she would honor the subpoena—and, separately, whether the relevant portion of her testimony was even admissible. It follows that, in a close case based primarily on DNA evidence and where there was other evidence to support defendant's theory of the case, defense counsel could have reasonably strategized that it was inadvisable to delay the trial to procure and execute a material witness order with respect to such a witness, despite his prior statement that he intended to call her.
In reaching this conclusion, we are mindful that the court's credibility determinations in evaluating witness testimony at a hearing on a CPL 440.10 motion are entitled to great weight based on the court's superior opportunity to see the witnesses, hear the testimony, and observe demeanor (see People v Parsons, 169 AD3d 1425, 1426 [4th Dept 2019], lv denied 33 NY3d 980 [2019]). The majority rejects the court's credibility determinations regarding the witness's testimony, despite the great weight that they should be accorded. The court characterized parts of the witness's testimony as "neither persuasive or convincing" and "problematic." Additionally, the court could not "find a rationale that vindicates the veracity of critical components of her testimony" and was "unable to conclude her account is of convincing quality." Based on those observations, the court determined that "[t]he only logical conclusion is that [defense counsel] determined her testimony was not of significant value to the defense." In light of those clearly elucidated credibility determinations, we are unable to agree with the majority that the court did not appropriately weigh the evidence in denying defendant's motion.
Entered: June 12, 2020
Mark W. Bennett
Clerk of the Court