People v Everson (2023 NY Slip Op 00761)

People v Everson

2023 NY Slip Op 00761

Decided on February 10, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 10, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, MONTOUR, AND OGDEN, JJ.

53 KA 20-00223

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
LATWANN EVERSON, DEFENDANT-APPELLANT. (APPEAL NO. 2.) 

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (THOMAS M. LEITH OF COUNSEL), FOR DEFENDANT-APPELLANT.
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (BRADLEY W. OASTLER OF COUNSEL), FOR RESPONDENT. 

 Appeal, by permission of a Justice of the Appellate Division of the Supreme Court in the Fourth Judicial Department, from an order of the Onondaga County Court (Stephen J. Dougherty, J.), entered January 2, 2020. The order denied the motion of defendant to vacate a judgment of conviction. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law, the motion is granted, the judgment of conviction is vacated, and a new trial is granted.
Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon a jury verdict of two counts of assault in the first degree (Penal Law § 120.10 [1], [4]), two counts of attempted robbery in the first degree (§§ 110.00, 160.15 [1], [2]), and one count of criminal possession of a weapon in the second degree
(§ 265.03 [1] [b]). In appeal No. 2, defendant appeals by permission of this Court from an order denying, after a hearing, his motion pursuant to CPL 440.10 to vacate the judgment in appeal No. 1.
Defendant's conviction stems from an attempted robbery that resulted in two victims being shot. Both victims gave statements to law enforcement that two assailants were involved. The first victim identified defendant as the assailant who shot him. The second victim initially told investigators that one assailant was a heavyset black male who was between five feet seven inches and five feet nine inches tall wearing a black hoodie and a black mask and that the other assailant was wearing all black and a mask. A police report reflects that the second victim subsequently became "uncooperative" and asserted that he could not recall anything from the night of the incident. Defendant and a codefendant were indicted for their alleged conduct with respect to only the first victim. At trial, the first victim testified that defendant was one of the two assailants and the one who shot him. The second victim did not testify. In his defense, defendant presented the testimony of several family members, as well as his own testimony, that he was not present at the scene of the attempted robbery, but rather at his mother's home, during the relevant time. The jury convicted defendant on all counts.
Defendant subsequently moved pursuant to CPL 440.10 to vacate the judgment, alleging, inter alia, that defense counsel was ineffective because she failed to investigate or call the second victim to testify on defendant's behalf at trial. At the hearing on the motion, among other witnesses, two of defendant's family members testified that they told defense counsel that there were rumors that the second victim was publicly denying defendant's involvement in the attempted robbery. The second victim himself testified that defendant was not present during the attempted robbery, that he told the prosecution that defendant was not involved, and that he would have so testified at trial had he been called upon to do so. County Court, finding parts of the testimony proffered by defendant's witnesses not credible, denied the motion.
Defendant contends in appeal No. 1 that the verdict is against the weight of the evidence on the issue of identity. Viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we reject that contention (see generally People v Bleakley, 69 NY2d 490, 495 [1987]). Although a different finding would not have been unreasonable, it cannot be said that the jury failed to give the evidence the weight it should be accorded (see id.). The jury was entitled to disbelieve the testimony of defendant's family members, who attempted to provide defendant with an alibi (see People v Phong T. Le, 277 AD2d 1036, 1036 [4th Dept 2000], lv denied 96 NY2d 762 [2001]).
We agree with defendant in appeal No. 2, however, that his motion to vacate the judgment in appeal No. 1 should have been granted because he was denied effective assistance of counsel at trial. "To prevail on his claim that he was denied effective assistance of counsel, defendant must demonstrate that his attorney failed to provide meaningful representation" (People v Caban, 5 NY3d 143, 152 [2005]; see People v Benevento, 91 NY2d 708, 712 [1998]; People v Baldi, 54 NY2d 137, 147 [1981]). A defendant claiming ineffective representation "bears the ultimate burden of showing . . . the absence of strategic or other legitimate explanations for counsel's challenged actions" (People v Lopez-Mendoza, 33 NY3d 565, 572 [2019] [internal quotation marks omitted]). "It is well settled that '[t]he failure to investigate or call exculpatory witnesses may amount to ineffective assistance of counsel' " (People v Borcyk, 184 AD3d 1183, 1184 [4th Dept 2020]; see People v Pottinger, 156 AD3d 1379, 1380 [4th Dept 2017]).
We conclude on the hearing record that, even affording deference to the motion court's credibility determinations given "its opportunity to see the witnesses, hear the testimony, and observe demeanor" (People v Thibodeau, 151 AD3d 1548, 1552 [4th Dept 2017], affd 31 NY3d 1155 [2018]), defendant nonetheless met his burden of establishing that he received less than meaningful representation (see People v Jackson, 202 AD3d 1483, 1485 [4th Dept 2022], lv denied 38 NY3d 1071 [2022]). Defendant established that, prior to trial, defense counsel possessed the police report with the second victim's statements to law enforcement. In his initial statement, the second victim described one assailant as heavyset, a description that did not match the height and weight of defendant at the time of his arrest, and he described both assailants as wearing masks. Thus, defense counsel was aware prior to trial that the second victim's description of the assailants conflicted with the first victim's asserted ability to identify one of the assailants as defendant. Nonetheless, as the motion court expressly found, defense counsel never interviewed the second victim.
Further, defense counsel testified at the hearing that she had almost no recollection of the pertinent events but nonetheless speculated that she had concluded that the second victim would not have been helpful to the defense (cf. People v Dombrowski, 94 AD3d 1416, 1417 [4th Dept 2012], lv denied 19 NY3d 959 [2012]). Even assuming, arguendo, that the second victim's purported uncooperativeness with law enforcement and subsequent statement that he "[could] not recall anything from the night of the incident" would have provided a strategic basis for choosing not to present the second victim's testimony at trial, we conclude that "it does not provide an excuse for counsel's failure to investigate [him] as [a] possible witness[ ]" (People v Davis, 193 AD3d 967, 971 [2d Dept 2021]; see People v Williams, 206 AD3d 1625, 1626 [4th Dept 2022], lv denied 38 NY3d 1154 [2022]; see generally People v Oliveras, 21 NY3d 339, 348 [2013]). In any event, the fact that a witness, particularly one such as the second victim who has had prior contact with law enforcement, is reluctant, or even refuses, to talk to the prosecution is far from conclusive evidence that the witness would not have cooperated with a defense attorney. Here, the second victim's hearing testimony that defendant was not present during the shooting is consistent with his initial statement to law enforcement, and it is also "wholly consistent with the theory pursued by [defense] counsel [at trial], namely that defendant was not present at the shooting and that the crime was instead committed by [different] individual[s]" (Williams, 206 AD3d at 1628). Additionally, although the motion court chose to credit the testimony of the trial prosecutor, and discredit the second victim's testimony, with respect to whether the second victim ever named for him the two individuals that the second victim believed carried out the attempted robbery, there is no evidence in the hearing record contrary to the second victim's testimony that he would have named those individuals at trial had he been called (cf. People v Cosby, 82 AD3d 63, 68 [4th Dept 2011], lv denied 16 NY3d 857 [2011]).
We therefore agree with defendant that the hearing record discloses no tactical reason for [*2]defense counsel's failure to interview the second victim (see Williams, 206 AD3d at 1628). Inasmuch as defendant established that defense counsel "did not fully investigate the case and did not collect the type of information that a lawyer would need in order to determine the best course of action" (Oliveras, 21 NY3d at 348), we conclude that defense counsel's deficient conduct was "sufficiently egregious and prejudicial as to compromise [the] right to a fair trial" (Caban, 5 NY3d at 152; see Williams, 206 AD3d at 1628).
In light of our determination, defendant's remaining contentions in both appeals are academic.
Entered: February 10, 2023
Ann Dillon Flynn
Clerk of the Court