People v Hussain (2024 NY Slip Op 05513)

People v Hussain

2024 NY Slip Op 05513

Decided on November 7, 2024

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 7, 2024

CR-23-1493

[*1]The People of the State of New York, Respondent,
v
Nauman Hussain, Also Known as Shawn Hussain and Arslan Hussain, Appellant.

Calendar Date:September 6, 2024

Before: Garry, P.J., Egan Jr., Reynolds Fitzgerald, Ceresia and Powers, JJ.

Law Office of Steven Sharp, Albany (Steven M. Sharp of counsel), for appellant.
Susan J. Mallery, District Attorney, Howes Caves (Karen F. McGee, New York Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Peter A. Lynch, J.), rendered May 31, 2023 in Schoharie County, upon a verdict convicting defendant of the crime of manslaughter in the second degree (20 counts).
In October 2018, a stretch limousine for hire crashed at the bottom of a hill in Schoharie County, killing all 17 of its passengers, two pedestrians and the driver of the vehicle. An investigation revealed that the limousine had experienced catastrophic brake failure, attributable to protracted neglect of proper inspection, maintenance and repairs. During the relevant period, defendant was handling the day-to-day affairs of the business that rented out the limousine, including putting the vehicle into service on the day of the accident. Defendant was subsequently indicted on 20 counts of manslaughter in the second degree and 20 counts of criminally negligent homicide. Following his guilty plea to the lesser counts and later withdrawal of that plea, the matter proceeded to trial. A jury found defendant guilty of the manslaughter counts, and Supreme Court sentenced him to 20 concurrent prison terms of 5 to 15 years. Defendant appeals.
Defendant first argues that his convictions are legally insufficient and against the weight of the evidence, maintaining that the People failed to establish both the requisite mens rea and causation. We address each aspect of his challenge in turn. As charged here, "[a] person is guilty of manslaughter in the second degree when . . . [h]e [or she] recklessly causes the death of another person" (Penal Law § 125.15 [1]). In this context, a defendant acts recklessly if he or she "is aware of and consciously disregards a substantial and unjustifiable risk" that death will occur (Penal Law § 15.05 [3]; see People v Gaworecki, 37 NY3d 225, 230 [2021]). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation" (Penal Law § 15.05 [3]), and the defendant must "engage in some blameworthy conduct contributing to that risk" (People v Asaro, 21 NY3d 677, 684 [2013]; see People v Li, 34 NY3d 357, 364 [2019]; People v Boutin, 75 NY2d 692, 696 [1990]).
Viewing the facts in a light most favorable to the People (see People v Danielson, 9 NY3d 342, 349 [2007]), the proof at trial established that, during the time that defendant oversaw the operations of the subject limousine rental business, owned by his father, the company had no systems in place for the routine inspection and maintenance of its vehicles, in contravention of both industry practice and regulation. The business' limousines were observed to have expired inspection stickers and registrations, and at least one driver ultimately elected to stop working for the business because he was "uncomfortable" with its vehicles. That driver specifically refused to drive the subject limousine — a 2001 XLT Ford Excursion that had been stretched after market. [*2]Defendant was directly involved in the 2016 purchase of that limousine, and he was personally advised by its seller of the need to comply with the regulations of, among others, the Department of Transportation (hereinafter DOT), given the vehicle's 18-person seating capacity. Defendant's former driver testified that he similarly brought relevant DOT regulations to defendant's attention, but defendant assured him that he did not need to comply with those regulations because the limousine had been registered as a personal vehicle. The limousine, however, had been repeatedly registered with the Department of Motor Vehicles (hereinafter DMV), by either defendant or the business generally, as a vehicle for hire. Beginning in June 2017 and up until the date of the accident, defendant was advised on numerous occasions by DOT officials of the need to obtain a DOT certificate of authority to transport passengers for compensation in any vehicle with a seating capacity of more than 10 passengers and that, before such certificate would be granted, any such vehicle would need to undergo a DOT bus inspection. Online listings seeking to sell the limousine began to emerge in November 2017, under a phone number attributable to defendant, in which the vehicle was marketed as "DOT [r]eady." In January 2018, due to his continued noncompliance with DOT's admonitions, defendant was expressly advised to cease such operations.
Subsequent roadside inspections of the limousine — which DOT officials made clear to defendant were not the requisite bus inspection — resulted in a number of violations being issued to defendant. At the first such inspection in March 2018, an out-of-service sticker was placed on the vehicle for, among other issues, a constricted hydraulic brake hose going to the left rear wheel — intentionally impinged by what appeared to be a vice grip — that resulted in defective braking. At the end of April 2018, defendant brought the vehicle to a location of Mavis Discount Tire for repairs, after transmission fluid had been erroneously added to the limousine's braking system. Defendant reported that the brake pedal was low and that the right rear brake was grinding. Notwithstanding their prior advice to defendant to have the brake system promptly flushed to address the contaminated brake fluid, Mavis discovered that transmission fluid had worked its way through the braking system. The vehicle's brake pads were also worn down to the metal. Mavis made certain comprehensive repair recommendations at that time, but defendant — who was still actively trying to sell the limousine — instructed them to perform only the minimum repairs needed to get the vehicle back on the road in time for prom season. Ultimately, Mavis replaced the left rear hydraulic brake hose, left rear caliper and the vehicle's brake pads and bled the system. When defendant retrieved the vehicle in May 2018, he requested that Mavis inspect it, and Mavis issued defendant a DMV inspection sticker, [*3]although it was unauthorized to do so for such a large vehicle. Despite the fact that several other out-of-service violations identified in the March 2018 roadside inspection were not addressed, DOT's out-of-service sticker was removed from the limousine sometime after these repairs.
Defendant brought the limousine back to Mavis again in June and July 2018, having personally experienced that its brake pedal was still not holding pressure predictably. Mavis again advised defendant as to what needed to be done to fix the braking system correctly following its contamination, making clear that there would be "[r]epercussions" from the transmission fluid, meaning that "internal components could fail," and that defendant was "fighting the inevitable" in that respect. Mavis specifically recommended replacing all four calipers, among other parts, but defendant again directed that the minimum repair be performed to get the vehicle back on the road, which this time amounted to only brake pads. Defendant requested assurances from Mavis that these minimum repairs would be adequate, assurances that Mavis would not provide. Defendant then continued to rent out the limousine for hire, while also continuing to advertise it for sale as "full[y] serviced."
In September 2018, at a second DOT roadside inspection, defendant received many of the same violations, as well as a violation for failing to correct previously-identified defects. An out-of-service sticker was again applied to the limousine, and defendant was again expressly informed that the out-of-service violations had to be corrected before the vehicle could be used on the roadways in this state. He was also reminded that the limousine required a DOT bus inspection before it could be operated legally. Defendant never obtained such inspection, and a vehicle autopsy conducted following the subject accident revealed that none of the identified defects had been remedied. DOT's most recent out-of-service sticker was discovered crumpled up in defendant's personal vehicle.
The foregoing proof was sufficient for the jury to conclude beyond a reasonable doubt that defendant was aware of and consciously disregarded the state of disrepair of the limousine's braking system — including by avoiding proper inspection, neglecting appropriate maintenance and affirmatively rejecting necessary repairs. Given the circumstances, including the age of this oversized vehicle transporting passengers, the jury could find that defendant disregarded a substantial and unjustifiable risk of death. As the proof also made clear that such disregard was a gross deviation from the standard of conduct of reasonable persons in defendant's situation, the People proffered legally sufficient evidence to establish the required mental state for second degree manslaughter (see People v Phippen, 232 AD2d 790, 790-791 [3d Dept 1996]; cf. People v Congregational Khal Chaisidei Skwere, 232 AD2d 919, 921 [3d Dept 1996], lv denied 89 NY2d 984 [1997]).
As for causation, a person causes the death of another when that person's conduct is a "sufficiently direct cause" of that death (People v Kibbe, 35 NY2d 407, 412 [1974]; see People v Hernandez, 82 NY2d 309, 314, 317 [1993]). Conduct is a sufficiently direct cause of death for the purpose of criminal liability when (1) the conduct is "an actual contributory cause of death" (People v Matos, 83 NY2d 509, 511 [1994]) and (2) the death was a "reasonably foreseeable" result of that conduct (People v Hernandez, 82 NY2d at 314; see People v Davis, 28 NY3d 294, 300 [2016]). Conduct is an actual contributory cause of death when that conduct "forged a link in the chain of causes which actually brought about the death" (People v Stewart, 40 NY2d 692, 697 [1976]; see People v Li, 34 NY3d at 369) — in other words, when the conduct "sets in motion," or continued in motion, the events that ultimately resulted in the death (People v Matos, 83 NY2d at 511; see People v DaCosta, 6 NY3d 181, 184 [2006]; Matter of Anthony M., 63 NY2d 270, 280 [1984]). Death is a reasonably foreseeable result of a person's conduct when the death "is something which should have been foreseen as being reasonably related to the acts of the accused" (People v Kibbe, 35 NY2d at 412; see People v Davis, 28 NY3d at 300).
The People's uncontroverted expert testimony established that the cause of the accident was catastrophic brake failure. More specifically, the expert explained that, as the limousine descended the subject hill, the driver would have been forced to progressively increase the amount of brake pedal pressure to slow the vehicle's momentum due to the preexisting condition of its rear brakes; the right rear brake was already inoperable because both caliper pistons were seized within their bores, and the left rear brake had reduced braking force due to excessive wear of its components, consistent with recurrent metal-to-metal contact. The expert estimated that those conditions existed for at least six months preceding the accident. At some point descending that steep gradient, the braking force, and thus the pressure of the fluid in the braking system, caused a steel transverse brake line, which was also corroded, to fracture. Once that occurred, the rear brakes were rendered completely inoperable. Although the dual circuit master cylinder continued to enable front braking, the sheer kinetic energy of the limousine quickly caused the brake fluid to far surpass its boiling point, introducing air into the liquid and permitting it to compress, which in turn caused a loss of hydraulic pressure in the braking system altogether.
Defendant argues that the People were required to show that it was foreseeable that the accident, and thus the death of the victims, "would occur in the manner that it did" (People v Roth, 80 NY2d 239, 244 [1992]), which, according to defendant, is that a corroded steel brake line would fracture and cause a cascading loss of hydraulic pressure. First, this is an [*4]oversimplification of the expert's testimony, which made clear that the preexisting condition of the limousine's rear brakes — as a result of the aforementioned lack of inspection, maintenance and repairs — was a crucial factor in what caused the transverse brake line to fracture in the first instance (compare People v Bonaventura, 271 App Div 900, 900 [2d Dept 1946]). As explained above, the condition of the rear brakes was directly attributable to defendant's conduct (compare People v Phippen, 232 AD2d at 791-792). Second, we are not persuaded that this case is akin to manufacturing liability cases where there can be countless, disparate hazards on a jobsite, necessitating that the People prove that one among many hazards actually caused the death(s) at issue, and thus whether that precise cause of death was foreseeable (compare People v Roth, 80 NY2d at 243-244; People v Warner-Lambert Co., 51 NY2d 295, 307 [1980], cert denied 450 US 1031 [1981]). The highly specific showing that defendant urges regarding the mechanisms of this interconnected hydraulic braking system was not required to establish causation under these circumstances. There is thus "a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d at 349 [internal quotation marks and citations omitted]; cf. People v Congregational Khal Chaisidei Skwere, 232 AD2d at 920-921). Given, among other things, that the jury was asked to credit the testimony of Mavis employees who admitted to performing certain unauthorized/fraudulent acts, another verdict would not have been unreasonable (see People v Danielson, 9 NY3d at 348). However, weighing the relative probative force of the testimony and the relative strength of conflicting inferences that may be drawn from the testimony (see id.), we further find that the verdict is supported by the weight of the evidence (see Penal Law § 125.15 [1]).
Defendant relatedly argues that he was deprived of his right to a fair trial by Supreme Court's jury instruction on causation. Supreme Court read the jury the expanded pattern instruction on cause of death but denied defendant's requests to (1) tailor its explanation of foreseeability to brake failure and (2) include the optional pattern language for intervening acts (see CJI2d[NY] Expanded Charge on Cause of Death, https://www.nycourts.gov/judges/cji/1-General/CJI2d.Causation-Death.pdf [last accessed Nov. 1, 2024]). As for foreseeability, although the People proffered an abundance of proof illustrating the depth of defendant's recklessness, and his extraordinarily cavalier approach to running a highly regulated business more generally, there was no evidence upon which the jury could have reasonably concluded that anything other than catastrophic brake failure was the actual, immediate cause of the subject accident (compare People v Roth, 80 NY2d at 239). For example, although the People [*5]elicited proof that defendant permitted the limousine's driver to operate the vehicle on the day of the accident knowing that the driver lacked the requisite passenger endorsement on his commercial driver's license, the expert proof at trial conclusively established that no driver error was to blame for the actual crash. Thus, reading the pattern charge against the evidence adduced at trial (see People v Walker, 26 NY3d 170, 174-175 [2015]), we do not share defendant's concerns over juror unanimity.
Defendant was also not entitled to an intervening cause instruction based upon Mavis' allegedly fraudulent work. The testimony at trial established that Mavis erroneously billed defendant in May 2018 for certain repairs that had not in fact been performed — replacing the brake master cylinder and flushing the brake system to remove any remaining transmission fluid. However, the evidence further established that those two repairs were ultimately unnecessary at the time; it was undisputed that the master cylinder was functional at the time of the accident and that the limousine's brake fluid ran clear after the lines were bled. In any event, the proof also showed that defendant was repeatedly cautioned by Mavis that the minimal work that he authorized them to perform was temporary and/or partial and that components of the braking system would continue to fail. As for Mavis' inspection, it first bears noting that, even if a DMV inspection had been permissible for this commercial vehicle and duly performed, the evidence at trial was that Mavis did not have the authority to fail a vehicle from a DMV inspection for facial corrosion on a brake line. Significantly, the evidence uniformly demonstrated that defendant was fully aware that a DOT bus inspection was the safety inspection required for the limousine when he asked Mavis to perform an inspection. "[A]n intervening, independent agency will not exonerate [a] defendant unless the death is solely attributable to the secondary agency, and not at all induced by the primary one" (People v Li, 34 NY3d at 370 [internal quotation marks and citations omitted]). As there is no view of the trial evidence that would support a finding that the victims' deaths are solely attributable to Mavis, the pattern charge provided was adequate.
Defendant next argues that Supreme Court violated his right to the effective assistance of counsel when it refused to grant him additional time to confer with counsel prior to withdrawing his guilty plea.[FN1] "A granting of an adjournment for any purpose is a matter of discretion for the trial court" (People v Singleton, 41 NY2d 402, 405 [1977]; see People v Oskroba, 305 NY 113, 117 [1953]), although, "when the protection of fundamental rights has been involved in requests for adjournments, that discretionary power has been more narrowly construed" (People v Spears, 64 NY2d 698, 700 [1984]; see People v Danaher, 115 AD2d 905, 906-907 [3d Dept 1985]).
In September 2021, the People and defendant [*6]entered into a plea agreement, pursuant to which defendant agreed to plead guilty to the 20 counts of criminally negligent homicide in satisfaction of the indictment and in exchange for a term of probation. County Court (Bartlett III, J.) accepted defendant's guilty plea and placed him on interim probation in accordance with the agreement. Judge Bartlett later retired, and the case was reassigned in July 2022. The matter was scheduled for sentencing during a subsequent appearance before Supreme Court. On the date of the anticipated sentencing in August 2022, the court advised defendant that it would not abide by the plea agreement and intended to sentence him, that day, to the maximum allowable term of imprisonment — 1&frac13; to 4 years — for each count to which he had pleaded guilty, which would be required to run concurrently (see Penal Law §§ 70.00 [2] [e]; [3] [b]; 70.25 [2]; 125.10). The court then afforded defendant just 15 minutes to confer with counsel to decide whether he wished to move forward or withdraw his plea. When the proceedings resumed approximately 20 minutes later, the court denied defendant's request for additional time and demanded an answer. Counsel responded that, "[i]n light of the [c]ourt's position, [defendant was] impelled" to seek vacatur of the plea, and the court granted that request.
This haste was improvident. We cannot condone the impatience demonstrated by Supreme Court when, surely, a longer period of adjournment was appropriate in light of the circumstances. Nonetheless, we do not conclude that this abuse necessitates reversal. "[A] defendant has a right to the effective assistance of counsel on his or her motion to withdraw a guilty plea" (People v Mitchell, 21 NY3d 964, 966 [2013]; see People v Rozzell, 20 NY2d 712, 713 [1967]), but this is not an appeal from a conviction following a guilty plea where the right to counsel has arguably been infringed upon with respect to such a motion. Ultimately, unlike the right to a fair trial, a defendant does not have the right to a plea bargain (see People v Bank, 28 NY3d 131, 137 [2016]; People v Britt, 198 AD3d 1326, 1328 [4th Dept 2021], lv denied 37 NY3d 1095 [2021]).
Defendant lastly challenges the severity of the sentence imposed, which was the maximum allowable prison sentence (see Penal Law §§ 70.00 [2] [c]; [3] [b]; 70.25 [2]; 125.15 [1]). Initially, defendant's claim of vindictive sentencing is unpreserved for our review (see People v Paul, 202 AD3d 1203, 1212 [3d Dept 2022], lv denied 38 NY3d 1034 [2022]; People v Kabia, 197 AD3d 788, 792 [3d Dept 2021], lv denied 37 NY3d 1162 [2022]). Additionally, because defendant withdrew his guilty plea and was ultimately convicted of the higher counts of this indictment, we are unpersuaded by any suggestion that his time on interim probation transforms this maximum permissible sentence into an illegal one. Finally, we decline defendant's request to reduce his sentence as a matter of discretion in the interest of justice (see [*7]CPL 470.15 [6] [b]). Although we are cognizant of defendant's limited criminal history and his general compliance with probation, the underlying tragedy cannot be discounted. Twenty people lost their lives because defendant did not wish to inspect, maintain or repair the subject limousine. The sentence imposed is not unduly harsh or severe but instead reflects the grievous harm caused by defendant's recklessness, and his callousness.
Defendant's remaining claim is unavailing.
Egan Jr., Reynolds Fitzgerald, Ceresia and Powers, JJ., concur.
ORDERED that the judgment is affirmed.

Footnotes

Footnote 1: We reject the People's assertion that this argument is not preserved, as well as their claims of preclusion premised upon Matter of Hussain v Lynch (215 AD3d 121 [3d Dept 2023]).